**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MALCOLM BROGSDALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23 C 10105 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| A. TORRES-CORONA, P.A. SALINAS, | ) | |
| and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

After having a battery charge against him dropped, Plaintiff Malcolm Brogsdale sued his arresting officers, Defendants A. Torres-Corona and P.A. Salinas, for false arrest and malicious prosecution under 42 U.S.C. § 1983. Brogsdale also seeks to hold Defendant City of Chicago (the "City") liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Additionally, Brogsdale sued all Defendants for intentional infliction of emotional distress ("IIED"). Defendants move to dismiss each of Brogsdale's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court dismisses Brogsdale's § 1983 claims against Torres-Corona and Salinas because Brogsdale has not sufficiently pled that Torres-Corona and Salinas lacked probable cause to arrest him for battery. The Court also dismisses Brogsdale's *Monell* claim because Brogsdale failed to allege a policy or custom that caused him harm. Finally, the Court dismisses Brogsdale's IIED claims because the statute of limitations bars that claim against Torres-Corona and Salinas, and Brogsdale has not alleged that the City engaged in "extreme" or "outrageous"

conduct when it assigned Brogsdale to desk duty for several months or when it investigated Brogsdale.[1]

## BACKGROUND[2]

On September 18, 2021, Brogsdale, a Chicago police officer, stayed at his condominium with his girlfriend. Between 2 a.m. and 3 a.m., Billy Reynolds, a visitor of another resident in Brogsdale's building, started banging on Brogsdale's door. Reynolds knocked so hard on Brogsdale's door that he loosened the door from its frame and the knob from the door. Because of Reynolds' knocking, Brogsdale's girlfriend called 911 for help. In this phone call, she identified Brogsdale as a police officer to the 911 operator. While Brogsdale and his girlfriend waited for police officers to respond to their call, Reynolds continued to bang and knock on Brogsdale's front door and bang and kick on Brogsdale's back door. Brogsdale and his girlfriend feared for their safety.

Forty-five minutes passed before Torres-Corona and Salinas responded to the call. Chicago police officers had already responded to a call at Brogsdale's building about Reynolds that evening. The prior incident involved a different resident.

Torres-Corona and Salinas did not arrive with a supervisor, although Chicago Police Department ("CPD") policy requires a supervisor to be on site for an incident involving a police

---

[1] Pursuant to the Court's order at Doc. 22 dismissing his complaint, Brogsdale filed an amended complaint on June 3, 2024. However, because Brogsdale did not have the benefit of the Court's reasoning for why it dismissed his complaint, the Court strikes Brogsdale's Amended Complaint, Doc. 23, and grants Brogsdale leave to file a Second Amended Complaint if he can do so in compliance with this Opinion. The Court also denies Defendants' motions to dismiss, Doc. 24 and Doc. 26, without prejudice and will allow Defendants to refile after Brogsdale files a second amended complaint.

[2] The Court takes the facts in the background section from Brogsdale's complaint and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court does not consider the criminal complaint that Torres-Corona and Salinas attached to their motion to dismiss because it is not necessary to resolution of the present motions.

officer.  When Torres-Corona and Salinas arrived outside of the condominium complex, Brogsdale spoke to them over his balcony, identifying himself as a police officer and informing Torres-Corona and Salinas that he would buzz them inside.

After Torres-Corona and Salinas arrived, Reynolds tried to enter Brogsdale's condominium again, passing one of the responding officers while doing so.  Neither Torres-Corona nor Salinas reacted to Reynolds, but Brogsdale placed his hands on Reynolds.  Torres-Corona and Salinas arrested and charged Reynolds with a criminal offense.  They also arrested Brogsdale for battery under 720 Ill. Comp. Stat. 5.0/12-3-A-2.  The battery charge against Brogsdale was dismissed in October 2021.

As a result of his arrest, CPD assigned Brogsdale to desk duty for several months, which prevented him from the possibility of receiving overtime pay.  The City also initiated an investigation against Brogsdale.  Brogsdale does not know the status of the investigation.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016).  To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014).  A claim is facially plausible "when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. False Arrest and Malicious Prosecution Claims

Torres-Corona and Salinas move to dismiss Brogsdale's § 1983 false arrest and malicious
prosecution claims on the grounds that they had probable cause for the arrest. "Probable cause to
arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful
arrest . . . or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.
2006).

Probable cause exists "when the facts and circumstances that are known to [the officer]
reasonably support a belief that the individual has committed, is committing, or is about to
commit a crime." *Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). Whether the
officers had probable cause to arrest Brogsdale "depends on the facts known to [the officers] *at
the time of the arrest*." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 715 (7th Cir. 2013). Here,
Torres-Corona and Salinas arrested Brogsdale for battery. To commit battery, an individual
must "knowingly without legal justification by any means (1) cause[ ] bodily harm to an
individual or (2) make[ ] physical contact of an insulting or provoking nature with an
individual." 720 Ill. Comp. Stat. 5.0/12-3. "The existence of a legal justification for a battery is
not an element of the offense, but rather is an affirmative defense." *McBride v. Grice*, 576 F.3d
703, 707 (7th Cir. 2009).

Here, Brogsdale has not sufficiently pleaded that Torres-Corona and Salinas lacked
probable cause to arrest Brogsdale for battery. Instead, Brogsdale all but admits that probable
cause existed by alleging that he placed his hands on Reynolds. *See Cosby v. Rodriquez*, No. 23

C 2236, 2024 WL 167711, at *12 (N.D. Ill. Jan. 16, 2024) (dismissing plaintiff's complaint where he stated that he sprayed officers with a toy water pistol, thus admitting to giving the officers probable cause to arrest him for battery); *Jones v. Gonzalez*, No. 22-CV-1333, 2023 WL 4549508, at *6 (N.D. Ill. July 14, 2023) ("By admitting the existence of probable cause, Jones has punched his own ticket out of the courthouse.").

Brogsdale attempts to overcome this fact by arguing that he acted in self-defense, an affirmative defense. *See People v. Lee*, 213 Ill. 2d 218, 224 (2004). Generally, the "existence of an affirmative defense to the underlying charge has no bearing on the probable cause analysis." *Beiles v. City of Chicago*, 987 F. Supp. 2d 830, 836 (N.D. Ill. 2013). And while "[a] police officer may not ignore conclusively established evidence of the existence of an affirmative defense" when making a probable cause determination, simply alleging an affirmative defense does not undermine probable cause because "the [arresting] officer has no duty to investigate the validity of any defense." *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004). Here, Brogsdale argues that Torres-Corona and Salinas knew he acted in self-defense because Reynolds tried to enter Brogsdale's condominium in front of them. But even taking this allegation as true, it does not conclusively establish that Brogsdale acted in self-defense when placing his hands on Reynolds. Brogsdale has not alleged facts that would have required Torres-Corona and Salinas to conclude that Reynolds threatened unlawful force against Brogsdale, that the danger of harm to Brogsdale was imminent, that Brogsdale's use of force was necessary, that Brogsdale was not the aggressor, and that Brogsdale's fear of Reynolds was reasonable. *See Lee*, 213 Ill. 2d at 224 (listing elements of self-defense claims).

Thus, based on the allegations in the complaint, the Court cannot conclude that Brogsdale has asserted conclusive evidence existed at the time of his arrest that he acted in self-defense.

With his complaint instead admitting to laying his hands on Reynolds, Brogsdale has not sufficiently alleged that Torres-Corona and Salinas lacked probable cause to arrest him for battery. *See Young v. Manna*, No. 21 C 5292, 2022 WL 683674, at *3 (N.D. Ill. Mar. 8, 2022) (dismissing a §1983 false arrest claim where plaintiff alleged that he spray painted a waste container, giving officers probable cause to arrest plaintiff for committing criminal damage to property and plaintiff's allegations "did not conclusively establish existence of [plaintiff's] affirmative defense of consent"); *Beiles*, 987 F. Supp. 2d at 837 (rejecting the plaintiff's argument that probable cause did not exist because of a potential affirmative defense where because "at the time of arrest, there was no conclusive evidence that Plaintiff acted out of necessity, and [the defendant] had no duty to imagine and investigate the validity of a necessity defense"). The Court therefore dismisses Brogsdale's § 1983 claims against Torres-Corona and Salinas without prejudice.

## II. IIED Claim

### A. Against Torres-Corona and Salinas

Torres-Corona and Salinas argue that the statute of limitations bars Brogsdale's IIED claim. The statute of limitations is an affirmative defense that Brogsdale need not anticipate in his complaint to survive a motion to dismiss. *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). However, the Court may consider a motion to dismiss on statute of limitations grounds when "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (considering statute of limitations defense on motion to dismiss where relevant dates were set forth in the complaint). The parties agree that Brogsdale's IIED claim has a one-year statute of

limitations, because he seeks damages from local government employees and the City. 745 Ill. Comp. Stat. 10/8-101.

For a "continuing tort" claim, like IIED, the limitations period does not begin to run "until the date of the last injury suffered or when the tortious acts cease." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 284 (2003). In a false arrest or malicious prosecution claim, the tortious acts cease on the day the criminal case terminates. *Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 829 (N.D. Ill. 2023) (holding plaintiff's IIED claims accrued when "all criminal charges were dismissed with prejudice"); *Brown v. City of Chicago*, No. 18 C 7064, 2019 WL 4694685, at *7 (N.D. Ill. Sept. 26, 2019) ("Plaintiff's IIED claim is timely because his complaint was filed less than a year after the charges against him were finally dropped"). Here, the statute of limitations began to run in October 2021, when Brogsdale's criminal case terminated. That the City allegedly continues to investigate Brogsdale does not affect the IIED claim raised against Torres-Corona or Salinas because Brogsdale does not allege that they are running the investigation.

Because Brogsdale filed his complaint on September 12, 2023, nearly two years after the termination of his state criminal case, he failed to meet the statute of limitations requirement for his IIED claims against Torres-Corona and Salinas. The Court therefore dismisses Brogsdale's IIED claim against Torres-Corona and Salinas with prejudice. *Atkins v. Coca Cola Enterprises, Inc.*, No. 07C1038, 2007 WL 4219196, at *6 (N.D. Ill. Nov. 28, 2007) (dismissing IIED claims with prejudice when the statute of limitations had run).

### B.  Against the City

In his Response, Brogsdale argues that his IIED claim also arises from the harm he experienced because of the City's investigation and decision to place him on desk duty for several months. The City argues that the Court should dismiss Brogsdale's IIED claim against it

7

because he improperly pleaded the claim against the City, it is time-barred, and it fails on the merits. The Court need only address whether Brogsdale has stated a valid IIED claim against the City.

To state an IIED claim, Brogsdale must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ.*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 935 (2004)). For conduct to rise to the level of extreme and outrageous, it "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992)). "Whether conduct is extreme and outrageous is evaluated on an objective standard based on all of the facts and circumstances." *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 745 (2000).

"Liability for emotional distress, as a common-law tort, is even more constrained in the employment context." *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). This is because "[c]ourts are concerned that, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Graham*, 318 Ill. App. 3d at 746. Therefore, "many courts have found abusive conduct not to be extreme and outrageous in employment situations where the employer had a legitimate purpose." *Id.*

Here, the fact that the City placed Brogsdale on desk duty for several months, as alleged, does not rise to the level of "extreme" or "outrageous" behavior required to plead an IIED claim.

*Loizon v. Evans*, No. 18 C 2759, 2020 WL 5253852, at *9 (N.D. Ill. Sept. 3, 2020) (plaintiff

failed to allege that defendant engaged in "extreme and outrageous conduct" even where

defendant "publicly subject[ed] [him] to potentially embarrassing discipline[ ] and eventual

termination" and placed him on desk duty, which "is an extremely embarrassing form of

discipline"); *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 154 (1999) (finding

plaintiff's allegations that "they were demoted, transferred, forced to perform 'demeaning' and

'humiliating' tasks, harassed, intimidated, and threatened with termination" insufficient to

establish an IIED claim because "in the absence of conduct calculated to coerce an employee to

do something illegal, courts have generally declined to find an employer's retaliatory conduct

sufficiently extreme and outrageous as to give rise to an action for intentional infliction of

emotional distress").  Nor does undergoing an investigation initiated by the City where that

investigation was spurred by Brogsdale's arrest, as alleged, constitute IIED.  *Cf. Jackson v. City

of Joliet*, No. 19 C 7284, 2020 WL 5800733, at *5 (N.D. Ill. Sept. 29, 2020) (acknowledging that

in the employment context, "conduct can be extreme and outrageous when the employer or

supervisor knows that there is no legitimate objective for the disciplinary investigation").

Because Brogsdale has not alleged that the City engaged in extreme or outrageous conduct, the

Court also dismisses Brogsdale's IIED claim against the City.

III.    *Monell* **Claim**

The City argues that Brosdgale has failed to allege any element of a *Monell* claim.  To

assert a claim against the City under § 1983, Brogsdale must allege "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be

said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  Liability may rest

on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread

practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Brogsdale's sole factual allegation against the City resides in paragraph 22 of his complaint: "[b]ecause of his arrest, the City of Chicago initiated an investigation of Brogsdale due to his status as a police officer. The results of that investigation and its status are unknown, and Brogsdale has not been informed of any disposition." Doc. 1 ¶ 22. Brogsdale asserts that the City violated his constitutional rights when it opened an investigation against him following his arrest. But Brogsdale has not sufficiently alleged an express policy as he failed "to identify specific language in a policy that violates a person's constitutional rights" or to "object to omissions in the policy." *Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010, at *15 (N.D. Ill. July 27, 2018) (explaining that an express policy requires showing either explicit language in the policy that violates someone's rights or the omission of language in a policy that violates someone's rights). Nor has Brogsdale alleged any facts to suggest that the City acted according to a widespread practice that is "so permanent and well settled as to constitute a custom or usage with the force of law" when it placed Brogsdale on desk duty and investigated him. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance or even three." (citations omitted)). Finally, Brogsdale has not identified anyone in his complaint who has final policymaking authority causing his injury. *See Bless v. Cook Cnty. Sheriff's Off.*, No. 13-CV-4271, 2015 WL 890370, at *6 (N.D. Ill. Feb. 27, 2015)

(dismissing *Monell* claim where plaintiff failed to identify an individual with final policymaking authority). Because Brogsdale fails to adequately allege the basis for his *Monell* claim, the Court dismisses it without prejudice. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("We have interpreted *Twombly* and *Iqbal* to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint. The degree of specificity required is not easily quantified, but the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

## CONCLUSION

For the foregoing reasons, the Court grants Torres-Corona and Salinas' motion to dismiss [11] and the City's motion to dismiss [13]. The Court dismisses Brogsdale's IIED claim against Torres-Corona and Salinas with prejudice. The Court dismisses Brogsdale's remaining claims against Torres-Corona and Salinas and all claims against the City without prejudice. The Court strikes Brogsdale's Amended Complaint [23] and grants Brogsdale leave to file a Second Amended Complaint by July 12, 2024. The Court denies without prejudice to refiling after Brogsdale files a second amended complaint Torres-Corona and Salinas' motion to dismiss [24] and the City's motion to dismiss [26].

Dated: June 19, 2024

_____
SARA L. ELLIS
United States District Judge

11